<hr />

ANDREW J. PAINE *vs.* GEORGE J. KELLEY.

Bristol.    October 28, 1907. — December 31, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Arrest*, On mesne process. *Statute*, Construction. *Unlawful Arrest. False Imprisonment. Abuse of Legal Process. Pleading*, Civil, Declaration. *Damages.*

The provisions of R. L. c. 168, § 1, with regard to arrest on mesne process in an action of contract, are not to be extended by construction.

A defendant must have been within the borders of the Commonwealth in order to have an intention "to leave" it within the meaning of R. L. c. 168, § 1, authorizing his arrest on mesne process if the plaintiff makes affidavit before a magistrate that the defendant "intends to leave the Commonwealth, so that execution, if obtained, cannot be served upon him."

An affidavit, that a defendant is about to leave the Commonwealth so that execution, if obtained, cannot be served upon him, made before a magistrate under R. L. c. 168, § 1, for the purpose of procuring a certificate to be attached to a writ authorizing his arrest on mesne process in an action of contract, is false if, at the time when it is made, the defendant is not within the Commonwealth, although at that time he is on a journey hither and intends, after a stay of less than an hour, again to leave.

At the trial of an action of tort for falsely procuring the plaintiff, a resident of another State, to come within this Commonwealth for the purpose of causing his arrest on mesne process in an action of contract, and then arresting him, there was evidence tending to show that the defendant resided in Attleboro in this Commonwealth, and that the plaintiff and the defendant had an appointment on a certain day in Providence in the State of Rhode Island; that, the day before the appointment, the defendant wrote to the plaintiff stating that he was ill and desired the plaintiff to meet him in Attleboro instead of in Providence and offering to pay the expenses which the plaintiff would incur in doing so; that, on the day of the appointment, in a telephone communication, the defendant again urged the plaintiff to come to him in Attleboro because he was ill and unfit for travel and stated that the plaintiff could arrive on the train leaving Providence at 12.07 P. M. and leave Attleboro again at 12.54 P. M.; that the

plaintiff, for accommodation of the defendant, promised to do so; that the defendant, while the plaintiff was on his journey from Providence, made the affidavit and procured the certificate necessary, under R. L. c. 168, § 1, to authorize an arrest of the plaintiff on mesne process, and, after the plaintiff arrived in Attleboro, caused his arrest. The plaintiff testified that, at the time of the interview when the arrest was made, the defendant " did not seem sick so far as he could see." *Held*, that there was evidence warranting the submission of the case to the jury.

An objection by a defendant that a declaration in a single count is bad for duplicity, made, not by demurrer, but after he has answered and gone to trial upon the merits, comes too late at the argument in this court upon exceptions taken to rulings upon other matters at the trial.

Instructions to the jury, before whom was being tried an action for false imprisonment, that they were not to give exemplary damages but only fair and reasonable compensation, were *held* to be correct.

TORT for false imprisonment. Writ in the Superior Court for the county of Bristol dated April 17, 1905.

The declaration was in a single count and alleged that the defendant, intending to arrest the plaintiff on mesne process in an action of contract, fraudulently induced him to come into this Commonwealth from Rhode Island, falsely made the oath required by R. L. c. 168, § 1, and caused his arrest and imprisonment.

At the trial, which was before *Hardy*, J., there was evidence that the defendant had an appointment with the plaintiff in Providence, Rhode Island, for the morning of March 18, on a matter of business not material to this action. On March 17, the defendant wrote to the plaintiff stating that he was not well and would like to have the plaintiff come to Attleboro to transact the business, stating that he would pay the plaintiff's expenses for the journey and requesting him to telephone whether or not he would do so. The plaintiff telephoned at 11.30 in the morning of March 18, and, according to his testimony, the defendant then promised that " everything was all fixed " and that the plaintiff could " come out on the seven minutes past twelve train . . . and that he could return on the six minutes to one train," and that he told the defendant that he would take a train leaving Providence for Attleboro at 12.07 P. M.

In the meantime, an attorney for the defendant had made out a capias writ against the plaintiff and left it with a magistrate for a certificate authorizing arrest under R. L. c. 168, § 1, and later the defendant made before the magistrate an affidavit that the plaintiff intended to leave the Commonwealth so that execution, if obtained, could not be served upon him, and pro-

cured such certificate, but the precise time of his making the affidavit was in dispute, the magistrate testifying it was "between eleven and twelve o'clock in the morning," and the defendant testifying that it was between 12.15 and 12.20 in the afternoon. There was evidence that the defendant gave the writ and certificate to the arresting officer at 12.20, and that the train from Providence, upon which the plaintiff was, arrived almost immediately. There also was testimony to the effect that it took twelve minutes for the train to reach Attelboro after it crossed the State line from Rhode Island.

Upon the arrival of the train, the plaintiff immediately went to the defendant's office. He testified that the defendant "did not seem sick so far as he could see." After they had transacted their business, the defendant demanded payment of the claim which was the subject of the action upon which the capais writ had issued. The plaintiff said he owed nothing. Thereupon, according to the plaintiff's testimony, the defendant said "I consider you do, and I have had things fixed to keep you here until this bill is paid." A deputy sheriff, who was waiting in the next room, then was called and the plaintiff was arrested and confined in a "little low, damp cell under ground" for four or five hours.

At the close of the evidence, the defendant requested the presiding judge to rule that upon all the evidence in the case the jury must find for the defendant; and that it was not necessary for the plaintiff to have been within the Commonwealth at the exact time when the defendant made the affidavit before the magistrate provided for by R. L. c. 168, § 1.

The requests were refused and the defendant excepted. The presiding judge in his charge to the jury stated, among other things, subject to exceptions by the defendant: "If this man was without the precincts of the State, and this defendant knew it at the time when he made the affidavit, there would be no justification or excuse for his making such an affidavit; he would have no probable cause for making such an affidavit; and it would be your duty to find for the plaintiff upon that issue. That is all the law I can state to you on that proposition. . . .

"If you find upon this evidence that this affidavit was made truly, and if you find upon the evidence that Mr. Paine came into this State without any fraudulent inducement on the part

of the defendant, then there is no liability here and your verdict should be for the defendant.

" If you find that he was not induced to come here by the defendant by any fraudulent means or devices or lures, as it is called in the law, if you find that there were no such means used to induce this plaintiff to come into the State, but you find that there was a false affidavit made whereby this man was illegally placed under arrest, then it would be your duty to find for the plaintiff upon that issue. If you find that there was no false affidavit made, but that this man Paine was induced to come into the State wrongfully, fraudulently, and by deceit, then it would be your duty to find for the plaintiff. So, in order to establish the liability here it is for you to say whether the plaintiff has satisfied you by a fair preponderance of the evidence that he has proved wrongful conduct on the part of the defendant in one or both of these elements which I have explained to you. If he has failed in that respect with reference to both elements claimed here, then your verdict should be for the defendant. If he has sustained that burden of proof with reference to the liability on either one of those elements, then on the question of liability your verdict should be for the plaintiff. . . .

" It is not for me to specify to you any standard whereby you can ascertain the extent of the damages here. It is for you to be reasonable, to act as men of common sense. . . . You are not here to give exemplary damages, as it is called ; you are here to give only fair and reasonable compensation. The damages that are imposed in this case are not damages for punishment, only damages for compensation, and what is reasonable and fair under all the circumstances for what this man may have suffered in his mind and for what he may have endured in the way of discomfort. Nothing appears to show that he suffered anything in his business relations ; nothing appears to show that he lost anything in a business way."

There was a verdict for the plaintiff, and the defendant alleged exceptions.

*F. S. Hall*, for the defendant.

*D. R. Radovsky*, for the plaintiff.

BRALEY, J. If the plaintiff's arrest and subsequent imprisonment at the procurement of the defendant were justified, because

in accordance with due course of law, the first ruling requested should have been granted. The plaintiff, who was domiciled in another State, so long as he remained there was not amenable to civil process issued in this jurisdiction. If, however, he voluntarily came here, then, even if a non-resident, as the alleged contract upon which the action is brought followed his person, he became subject to our laws for the collection of debts, and not only could a valid service be made upon him, but any personal property in his possession subject to attachment might be seized, or he could be arrested and held to bail. *Barrell* v. *Benjamin,* 15 Mass. 354. *Peabody* v. *Hamilton,* 106 Mass. 217. But, before his body could be lawfully taken, there must be a strict compliance with the provisions of R. L. c. 168, § 1, which are not to be extended by construction, as the debtor is coerced by the penalty of imprisonment to make payment of his debt. Under the statute, the only ground upon which an arrest on mesne process can be authorized by the magistrate to whom the creditor or some one in his behalf applies, is, that the debtor " intends to leave the Commonwealth so that execution, if obtained, cannot be served upon him." The magistrate must determine upon evidence submitted to him whether there is satisfactory proof of this jurisdictional requirement before he lawfully can grant the certificate, and, although upon their face the proceedings may appear to be regular, yet the debtor, who has been forcibly detained thereunder, may show in an independent suit that the affidavit and certificate in fact were false. If this is found, then, the authority to arrest having been wrongly procured by the creditor, the arrest which follows is unlawful.

In order to have an intention " to leave the Commonwealth " within the meaning of the statute, the plaintiff first must have been bodily within its borders. He undoubtedly may have had a fixed purpose upon departure from home to return when the journey had been completed, but such intention could not ripen into a legal cause for his detention in a foreign jurisdiction, until the law of the forum had attached. In other words, as any interference with the plaintiff's right to personal liberty, which included his freedom of movement from place to place at will, was unjustifiable without the statutory certificate, so his apprehension and confinement, where upon the evidence the certificate

could be found void because issued at a time when the magistrate had no jurisdiction of his person, affords no justification to the defendant by whom it was procured, and who directed the arrest. *Cody* v. *Adams*, 7 Gray, 59. *Winslow* v. *Hathaway*, 1 Pick. 210. *Clark* v. *Ward*, 7 Gray, 409. *Tellefsen* v. *Fee*, 168 Mass. 188. *Stephens* v. *Wilkins*, 6 Penn. St. 260.

But, distinct from any claim to redress arising from false imprisonment, the plaintiff put his right to recover upon the further ground that, even if it could have been found that he had arrived before the magistrate acted, his presence was involuntary. If, as alleged, he was induced by the false pretences of the defendant to come here with the purpose upon arrival of placing him under arrest, then he was not present of his own volition, but had attended under duress, because of the fraud practised upon him. The defendant, if found to have successfully pursued this policy, cannot be permitted under the formal guise of regularity of the proceedings to escape liability for this wrong, as such a result would confer upon him a benefit directly derived from an abuse of legal process, which the courts will not sanction. *Sweet* v. *Kimball*, 166 Mass. 332. *Wood* v. *Wood*, 78 Ky. 624. *Hill* v. *Goodrich*, 32 Conn. 588. *Wanzer* v. *Bright*, 52 Ill. 35. *Stein* v. *Valkenhuysen*, E., B. & E. 65.

It is now said that the count is bad for duplicity. This defence, however, comes too late, as, no demurrer having been interposed, the defendant answered and went to trial on the merits under a declaration which ambiguously set forth both causes of action. *Cronan* v. *Woburn*, 185 Mass. 91, 95.

The evidence being conflicting, the questions involved properly were left to the jury under suitable instructions. In submitting the measure of damages they were instructed that, while exemplary, or punitive, damages could not be awarded, the plaintiff could recover reasonable compensation for such mental distress and physical discomfort as he was shown to have suffered. These instructions were correct. *Derry* v. *Flitner*, 118 Mass. 131, 134. *Cook* v. *Brown*, 125 Mass. 503. *Flynn* v. *Butler*, 189 Mass. 377, 388. *Sweet* v. *Kimball, ubi supra. Bennett* v. *Sweet*, 171 Mass. 600, 601.

*Exceptions overruled.*