JOHN T. SIMPSON *vs.* CITY OF MARLBOROUGH.

Middlesex. June 11, 1920. — June 23, 1920.

Present: RUGG, C. J., CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Municipal Corporations,* Officers and agents. *Notice. Architect. Marlborough. Words,* "Approved."

Officers of a city or of a town have only such powers to bind their municipality by contract as are conferred by the express provision of a statute or by necessary implications therefrom.

One having business relations with a city or a town is fixed with notice of the existence and of the scope of the authority of those professing to act as its agents.

The mere fact, that a city received benefit from services rendered to it by an architect, does not render the city liable to pay for such services if it appears that they were rendered at the request of, and under an agreement purporting to have been made in its behalf by, persons acting without authority conferred by express provisions of a statute or by necessary implication from such provisions.

Section 16 of the charter of the city of Marlborough, St. 1890, c. 320, providing, "The city council shall not authorize the erection of a school house or any addition thereto nor pass any appropriation for such purpose until plans of the same have been approved by vote of the school committee, and until such approval has been certified in writing to the council by the chairman of said committee," vests in the city council the authority and duty to authorize the erection of school houses subject to the limitation that no final action can be taken until the plans have been approved by the school committee and the city council has been notified thereof in such a manner that it may be made a matter of final record.

By the provision of the charter of the city of Marlborough, above quoted, the school committee is given no authority either expressly or by implication to employ an architect to prepare plans and specifications for the erection of a school house.

CONTRACT for compensation for services as an architect alleged to have been rendered by the plaintiff to the defendant at the request and under agreement with duly authorized agents of the defendant, the declaration containing three counts, of which the third was upon an account annexed. Writ dated November 29, 1915.

In the Superior Court the action was heard by *Aiken*, C. J., without a jury. Material evidence is described in the opinion. At the close of the evidence the defendant asked for the following rulings:

"1. On all the evidence, a verdict should be ordered for the defendant.

"2. Under St. 1890, c. 320, § 16, the school committee cannot bind the city by an oral agreement made with the plaintiff.

"3. The school committee was not invested with any authority to spend money, either by general law, statute or by any authority given to it by the city; therefore, in its selection of the plaintiff as architect, it exceeded its powers and the city is not liable.

"4. The plaintiff himself is chargeable with certain knowledge of the powers conferred upon the school committee by law, and it was his duty to investigate these powers before entering into any contract with the city.

"5. No action will lie against a city or town for the act of a public officer or board, though inuring to its advantage, unless the right of action has been given by statute.

"6. A city or town is a governmental subdivision,—it possesses only the powers conferred upon it by law. Restrictions expressed by its vote, therefore are to be treated as strict limitation upon

the powers of its officers and agents. In this case, the mode of contracting is expressed by the city charter and the vote or order of July 12, 1915, is conclusive and the plaintiff is bound by this limitation."

The Chief Justice granted the fifth request and refused the others, making, among other rulings and findings, the following:

"The city charter directs that plans of a school house shall be approved by vote of the school committee and the approval certified in writing to the council by the chairman of the committee.

"At the request of the school committee the plaintiff prepared plans which the school committee by vote approved and the chairman of the committee certified the approval to the council in writing by filing in the city clerk's office a copy of the vote of the committee.

"In my opinion, the requirement of approval of plans imports the right to procure plans and to bind the credit of the city for the reasonable cost of the plans.

"The plaintiff acted in good faith. He furnished to the committee plans and accompanying specifications sufficient in detail for determining the processes and cost of construction.

"I find the reasonable charge for the work is $1,131.90."

There was a finding for the plaintiff in the sum of $1,401.48, and the defendant alleged exceptions.

The case was submitted on briefs.

*R. H. Beaudreau,* for the defendant.

*E. H. Vaughan, E. T. Esty & J. Clark, Jr.,* for the plaintiff.

RUGG, C. J. This is an action of contract to recover compensation for services rendered by the plaintiff in preparing plans and specifications for a school house, the erection of which in the defendant city was contemplated in 1915. The city council on June 7, 1915, passed an order for the appointment of a committee consisting of three members of the school committee, the mayor, two aldermen and three members of the common council, "invested with full authority to make contracts, purchase supplies and fittings and superintend the erection of a new school house" with "power to do any and all things necessary for the construction and equipment of the building . . . according to plans approved by the school committee." Orders also were passed for a substantial loan and appropriation. Early in July

the school committee acting by itself issued invitations to architects to prepare sketches for the new building, selected the plaintiff as architect, and approved plans and specifications prepared by him in detail pursuant to such employment. Certificate of such approval was filed with the city clerk. The plaintiff never conferred with the construction committee appointed in accordance with the city council order of June 7.

The case hinges upon the question whether the defendant was bound by this action of the school committee, or whether their action was without authority of law. It is elementary in the law of cities and towns that their officers have only such powers to bind their municipalities by contract as are conferred by the express terms or necessary implications of statutes. They have no inherent powers of this nature. It follows from this principle that persons having business relations with cities and towns are bound to take notice of the scope of the authority of those professing to act as agents, for the reason that the matter, being controlled by public law, is equally open to the knowledge of all. Benefit to the city or town is irrelevant in this connection. *Boston Electric Co.* v. *Cambridge,* 163 Mass. 64. *Higginson* v. *Fall River,* 226 Mass. 423.

Under the general law the power and duty of erecting school buildings is vested in the cities and towns and not in the school committees. R. L. c. 42, § 49. While under certain circumstances, when a city or town refuses to provide sufficient accommodations for the conduct of the schools required by law, the school committee may exercise somewhat extensive and drastic powers, the case at bar does not come within that principle because the city council, so far as is shown by this record, acted seasonably and adequately toward the erection of the school house.

It is provided by the charter of the defendant, St. 1890, c. 320, § 16, that "The city council shall not authorize the erection of a school house or any addition thereto nor pass any appropriation for such purpose until plans of the same have been approved by vote of the school committee, and until such approval has been certified in writing to the council by the chairman of said committee." No other part of the charter of the defendant city, or of the general law, confers further power in this particular upon the school committee. The authority and duty to authorize the

erection of school houses and additions thereto through such committees or agents as it may determine is manifestly vested in the city council by these words of the charter. The general obligation and the main power rests with that body. There is, however, the limitation that no final action can be taken until the plans have been "approved" by the school committee and the city council notified thereof in such manner that it may be made matter of formal public record. That is the full sweep of power conferred upon the school committee and the utmost extent of the limitation placed upon the otherwise general duty and authority of the city council. Approval implies favorable conviction manifested by affirmation concerning a specific matter submitted for decision. It does not import initiative. Approval ordinarily indicates the will to assent to an act done by someone else rather than the doing of that act. See, however, *Clarke* v. *Fall River*, 219 Mass. 580. It signifies the application of sound judgment to a proposition emanating from another source and submitted for investigation. It requires the exercise of faculties of criticism and discrimination. It denotes positive sanction. It does not mean original and inventive construction in the first instance. On the other hand, it is not a mere perfunctory act. It imposes no mean responsibility. It carries power and duty of an effective nature. It is the word used in both the State and Federal Constitutions, in the charters of many cities and in R. L. c. 26, § 9, to describe the assent required by the chief executive before acts of the legislative department become operative. *Galligan* v. *Leonard,* 204 Mass. 202. *McLean* v. *Holyoke,* 216 Mass. 62.

The context in which the word occurs in the charter of the defendant confirms these general definitions. The construction of an important public building requires the preparation of plans. The body charged with the general duty of its erection naturally also attends to the preparation of plans, acting upon such suggestions as may be presented by the public board by which it is to be used. The power to erect a building commonly embraces the doing of all things necessary to its completion including suitable plans. *Vinal* v. *Nahant,* 232 Mass. 412. It would be a strained construction of the word to say that the right to employ an architect and cause him to make full plans and specifications followed

as a necessary consequence of the power to approve plans. If that had been the purpose of the Legislature, apt words to that end naturally would have been used: the duty of preparation instead of approval of plans would have been reposed in the school committee. The words of the statute cannot be stretched beyond their natural meaning, but must be interpreted as found. Doubtless, that the important project of erecting a school house may go forward in orderly fashion, there must be co-operation between the two boards and co-ordination of their work according to their respective functions. But it must follow the terms of the charter.

The school committee was not empowered to make the defendant responsible in contract to the plaintiff. The defendant's request for a finding in its favor should have been granted. The exceptions are sustained and under St. 1909, c. 236, § 1, judgment may be entered for the defendant.

*So ordered.*